UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SADDY FAMILY, LLC.,

            Plaintiff,

-against-

WADE LOUD AND LAMARCHE
ASSOCIATES INC.,
UNDERWRITERS AT LLOYDS
LONDON, JOHN DOE(S) AND/OR
XYZ being the persons identified in
the contract of insurance as the
"subscribing insurers" in endorsement
LSW 1001, INSURANCE OF LLOYD'S
UNDERWRITERS' NON-MARINE
ASSOCIATION, LLOYD'S MARKET
ASSOCIATION (NON-MARINE)
(hereinafter "LLOYD defendants" or
defendant), QUAKER SPECIAL RISK,
AS NAMED CORRESPONDENT,
in said policies.

            Defendants.

Civil Action No.:

NOTICE OF REMOVAL BASED
ON FRAUDULENT JOINDER

Pursuant to 28 U.S.C. §§1441(a) and 1446, defendants, Underwriters at Lloyd's, London subscribing to policies of insurance numbers QSRNJ20122002 and QSRNJ 20122000 (incorrectly sued herein as "John Does and/or XYZ being the persons identified in the contract of insurance as the 'Subscribing Insurers' in endorsement LSW 1001) (hereinafter referred to as "Underwriters"), Insurance of Lloyd's Underwriters' Non-Marine Association, Lloyd's Market Association, and Lloyd's Market Association (Non-Marine) (hereinafter referred to as the "Lloyd's Defendants") hereby remove the above-captioned action from the Superior Court of New Jersey, Law Division – Ocean County, to

United States District Court for the District of New Jersey. In support of this Notice of Removal, Underwriters and the Lloyd's Defendants state as follows:

## INTRODUCTION

1. Plaintiff filed its Complaint in the Superior Court of New Jersey, Law Division – Ocean County on October 4, 2013, where it was assigned with Docket No. L-2797-13 (the "State Court Action").

2. On or about November 1, 2013, plaintiff served its Summons and Complaint upon defendant, Quaker Special Risk ("Quaker"), a New Jersey corporation whose principal place of business is located in Eatontown, New Jersey.

3. On or about November 1, 2013, plaintiff attempted to effectuate service upon defendant, Wade Loud ("Loud"), a Massachusetts resident by delivery of the Summons and Complaint to the office of his employer, Lamarche Associates, Inc. ("Lamarche") in New Jersey.

4. On or about November 4, 2013, plaintiff served its Summons and Complaint upon defendant, Lamarche, a Massachusetts corporation whose corporate headquarters and principal place of business is located in Chelmsford, Massachusetts.

5. On or about November 7, 2013, Underwriters were served with plaintiff's Summons and Complaint through their designated agent for the receipt of service of process, Wilson, Elser, Moskowitz Edelman & Dicker, LLP. Pursuant to 28 U.S.C. §1446(a), a copy of the Summons and Complaint (the "Complaint"), with exhibits, received by Underwriters is attached hereto as **Exhibit "A"**. Underwriters are not aware of any other process, pleadings and/or orders served upon it in the State Court Action.

6. This Notice of Removal is timely pursuant to 28 U.S.C. §1446(b) and FRCP 6 as it is being filed within thirty (30) days of Underwriters initial receipt and service of the Complaint, which constitutes the "pleading . . . from which it may first be ascertained that the case is one which is . . . removable." *See* 28 U.S.C. §1446(b).

7. The Lloyd's Defendants have not been served with Summons and Complaint in the State Court Action.

8. The State Court Action arises from a dispute over plaintiff's insurance claims for Superstorm Sandy ("Sandy") related damages to commercial premises owned by plaintiff in Seaside Heights, New Jersey occurring on or about October 29, 2012. In its Complaint, plaintiff generally alleges that

    a. its two (2) commercial buildings, which are insured by Underwriters, suffered property damage due to Sandy from both wind and flooding;

    b. due to the property damage at the buildings and the accessibility issues within Seaside Heights following Sandy, it suffered a loss of business income;

    c. it presented various claims for each property to Underwriters stemming from Sandy, including claims for property damage, business personal property damage and/or loss, loss of business income, and theft;

    d. Underwriters have paid a portion of the claims, but declined to pay for all loss and damage claimed by plaintiff; and

   e.  The Lloyd's Defendants, Loud, Lamarche, and Quaker conspired to deprive it of the contractual benefits it is entitled to pursuant to Underwriters' policies of insurance.[1]

*See* Complaint – Exhibit A, at ¶¶ 2, 5, 7-8, 14-15, 18-19, 20, and 26.[2]

  9.  Based upon those allegations, Plaintiff purports to state claims against the Lloyd's Defendants, Loud, and Lamarche for: Breach of Contract (Count One), Tortious Breach of Contract (Count Two), Bad Faith (Count Three), Consumer Fraud (Count Four), and Course of Conduct (Count Five).

  10.  Plaintiff also purports to state a claim against Quaker for Conspiracy (Count Six).

## JURISDICTION AND VENUE

  11.  Plaintiff is a limited liability company, organized under the laws of the State of New Jersey with its principal place of business in New Jersey.

  12.  Underwriters are part of an unincorporated foreign insurance market organized under the laws of the United Kingdom, and which maintain their principal place of business in London, England.

  13.  The Lloyd's Defendants are voluntary associations of individuals who maintain their principal places of business in London, England and are residents of the United Kingdom. They are not insurers.

  14.  Loud is a Massachusetts resident.

---

[1] Underwriters' policies of insurance issued to plaintiff (the "policies") are attached to the Complaint as Exhibits A and B, and are incorporated herein by reference.

[2] Underwriters and the Lloyd's Defendants have cited to the Complaint in order to provide the Court with a concise summary of the allegations made by plaintiff. By citing to the Complaint in this Notice, neither Underwriters nor the Lloyd's Defendants intend to, nor do they admit to the veracity, completeness, or accuracy of any of the allegations contained within the Complaint.

15. Lamarche is a Massachusetts corporation whose corporate headquarters and principal place of business is located in Chelmsford, Massachusetts.

16. Quaker, while a New Jersey corporation with its principal place of business in New Jersey, does not defeat this Court's diversity jurisdiction as it was fraudulently joined in the State Court Action by plaintiff given that the Complaint fails to state a cognizable cause of action against it.

17. A plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy. New Jersey Courts define fraudulent joinder to be the joinder of an in state defendant "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Gil v. Related Mgmt. Co.*, 2006 U.S. Dist. LEXIS 56757 (D.N.J. Aug. 14, 2006) (quoting *Boyer v. Snap-On-Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). Specifically, the New Jersey District Court and the Third Circuit have found that the joinder of an in state defendant to be fraudulent when the claims against the defendant are "wholly insubstantial or frivolous". *See Allen v. Bongiovi*, 2007 U.S. Dist. LEXIS 19497 (D.N.J. Mar. 19, 2007); *see also Boyer*, 913 F.2d at 111-112.[3]

18. When determining whether a party has been fraudulently joined, the Third Circuit has advised that district courts must not turn the jurisdictional inquiry of fraudulent joinder into a motion to dismiss, such that a district court should refrain from reaching the merits of the claim. Instead, the Court must determine whether there is a reasonable basis

---

[3] "Fraudulent joinder" does not require a showing of fraud in the conventional sense and it does not reflect on the integrity of plaintiff or plaintiff's counsel. *See American Dredging Co. v. Atlantic Sea Con, Ltd.*, 637 F. Supp. 179 (D.N.J. 1986).

or colorable ground to support the claim. *See In re Briscoe*, 448 F.3d 201 (3d Cir. 2006); *see also Prudential Ins. Co. of Am. v. Barclays Bank PLC*, 2013 U.S. Dist. LEXIS 8992 (D.N.J. Jan. 22, 2013).

19. Here, there can be no recovery against Quaker under the laws of New Jersey based on the theory plaintiff has alleged against it. Thus, there is no reasonable basis or colorable ground to support plaintiff's claim against it. Accordingly, Quaker's joinder in the State Court Action was improper and fraudulent.

20. Count Six of the Complaint, the only Count addressed to Quaker, alleges with no factual support whatsoever, that Quaker conspired with the other named defendants to deprive plaintiff of its contractual benefits and because of this conspiracy Quaker is guilty of:

    a. Breach of contract;

    b. Tortious breach of contract;

    c. Bad faith;

    d. Violation of the Consumer Fraud Act; and

    e. Count Five (Course of Conduct), in concert with the other named defendants.

21. Count Six of the Complaint fails to allege a cognizable claim for breach of contract under New Jersey law as it is clear from the policies and plaintiffs' own allegations in the Complaint, that the policies were issued by Quaker in its capacity as "Correspondent" as agent for and on behalf of Underwriters. Notably, plaintiff even identifies Quaker as Underwriters' "named correspondent" in the caption of the State Court

Action. Moreover, pursuant to the policies' "Certificate Provisions", plaintiff was specifically advised of the following:

> **This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters")...

\*      \*      \*

The "Conditions" section of the policies further provides that:

> 2. Correspondent Not Insurer. The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever.

22. As Quaker acted as an agent for disclosed principals, meaning Underwriters, and as there was no agreement to substitute Quaker's liability for or to add it to that of its principals, Quaker is not liable under the policies which are the only contracts at issue in the Complaint. Thus, the causes of action against Quaker for breach of contract (Counts One and Two) fail. *See Stopford v. Boonton Molding Co.*, 56 N.J. 169 (N.J. 1970); *see also African Bio-Botanica, Inc. v. Leiner*, 264 N.J. Super. 359 (App. Div. 1993) (*citing Looman Realty Corp. v. Broad Street Nat. Bank of Trenton*, 32 N.J. 461, 476-79, 161 A.2d 247 (1960)). Similarly, any claim against Quaker for tortious breach of contract, bad faith, or course of conduct fails, as the Complaint does not allege that Quaker took any part in the investigation and/or adjustment of plaintiff's claims under the policies.

23. Plaintiff's claim against Quaker for violation of the New Jersey Consumer Fraud Act (the "NJCFA") likewise fails as actions seeking to recover under the NJCFA must meet the heightened pleading requirement of F.R.C.P. (9)(b) and thus, must allege the acts constituting the alleged fraud with particularity. Specifically, to satisfy this standard

the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *See Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442, 2008 U.S. Dist. LEXIS 48036 (D.N.J. June 23, 2008). A pleading which merely restates the unlawful practice contained in the NJCFA's statutory language, as plaintiff does in the Complaint, is insufficient. *See Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, 2008 U.S. Dist. LEXIS 105413 (D.N.J. Dec. 9, 2008). Moreover, the breach of an enforceable contract does not constitute a violation of the NJCFA and the mere denial of insurance benefits to which a plaintiff believes it is entitled does not comprise an unconscionable commercial practice. *Daloisio v. Liberty Mutual Fire Ins. Co.*, 754 F.Supp.2d 707 (DNJ 2010).

24. Finally, plaintiff's claim against Quaker for conspiracy (Count Six), likewise fails. In New Jersey a civil action for conspiracy is essentially a tort action. Therefore, to maintain an action for civil conspiracy, a plaintiff must also point to (1) an overt act of one or more of the conspirators in furtherance of the conspiracy; and (2) consequential damage to the rights of another, of which the overt act is the proximate cause. *See Farris v. County of Camden*, 61 F. Supp. 2d 307 (D.N.J., 1999). A plaintiff cannot bring an action alleging civil conspiracy unless the defendants committed an act which would be actionable even without the conspiracy. *Id.*; *see also Banco Popular North American v. Gandhi*, 184 N.J. 161, 177 (2005). Accordingly, the substance of the conspiracy claim is not the unlawful agreement, but the "underlying wrong which, absent the conspiracy, would give a right of action." *Bd. of Educ. v. Hoek*, 38 N.J. 213, 238 (1962). Therefore, the actionable element is the tort which the defendants agreed to

perpetrate and which they actually committed; a conspiracy is not actionable absent an independent wrong. See Farris v. County of Camden, *supra*.

25. In the instant matter, the underlying wrong is the alleged breach of contract (here the policies) by Underwriters to which Quaker is not a party and under which policies' very terms, Quaker cannot be liable. Because plaintiff's contract claim cannot form the basis of the conspiracy claim and because Quaker, a non-contracting party, could not conspire to breach the contract, there is no reasonable basis or colorable ground to support plaintiff's conspiracy claim.

26. Based upon the Complaint plaintiff filed in the State Court Action, plaintiff has no right of recovery against Quaker under New Jersey law. Therefore, the Court should ignore Quaker's citizenship for the purposes of determining the propriety of this removal. See American Dredging Co. v. Atlantic Sea Con, Ltd., 637 F. Supp. 179 (D.N.J. 1986). Complete diversity therefore exists with respect to the remaining defendants: Underwriters and the Lloyd's Defendants (who are residents and/or citizens of the United Kingdom), and Loud and Lamarche (who are residents and citizens of Massachusetts).

27. In addition to the above, pursuant to 28 U.S.C. 1332(a), the amount in controversy exceeds the sum of $75,000.00. See Exhibits "H-1" to "H-5" of the Complaint, constituting plaintiff's sworn statements in proofs of loss in connection with its claim for damages alleged to have been sustained at the 201 Boulevard premises (which total $1,416,590.20), and Exhibits "I-1" to "I-3" constituting plaintiff's sworn statements in proofs of loss in connection with its claim for damages alleged to have been sustained at the 401 Boulevard premises (which total $510,636.00).

28. Because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00, this Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §1441(b).

29. Venue is proper in this judicial district pursuant to 28. U.S.C. §1391(a)(2) in that a substantial part of the events giving rise to this action occurred in, and all of the property that is the subject of this action is situated in this District.

30. Pursuant to 28 U.S.C. §1446(d), notice of the filing of this Notice Of Removal will be given to all parties in the State Court Action by filing a Notice to Adverse Party of Removal to Federal Court, along with a copy of this Notice of Removal, in the State Court Action and by service upon all parties in accordance with applicable rules.

31. Defendants Loud and Lamarche have consented to the removal of this action, as evidenced by the declaration of Wade Loud, attached hereto as **Exhibit "B"**. Although Quaker's consent to removal is not necessary because it was fraudulently joined, *see Spialter v. Millman*, 2010 U.S. Dist. LEXIS 41032 (D.N.J. Apr. 26, 2010), Quaker nonetheless consents to the removal of this action as evidenced by the declaration of its counsel – Michael B. Pullano, Esq., attached hereto as **Exhibit "C"**.

32. Underwriters and the Lloyd's Defendants reserve their rights to raise all defenses and objections to this action after the action is removed to this Court.

Dated: New York, New York
November 20, 2013

                Respectfully submitted,

                ABRAMS, GORELICK, FRIEDMAN &
                JACOBSON, LLP.
                Attorneys for Defendants
                Underwriters and Lloyd's Defendants

By: _____
Michael E. Gorelick (MEG 6026)

By: _____
Gretchen B. Connard (GBC 2951)
One Battery Park Plaza, 4th Floor
New York, New York 10004
Telephone: (212) 422-1200

11